Good morning, Your Honors, and may it please the Court. My name is Taylor DeLaviaga. On behalf of Appellant Richard Rynearson, I'm a student of Professor Volokhs at the UCLA School of Law, and I'll be splitting time with him today. At the initiation of this federal suit, Rynearson faced two distinct threats to his speech. First, the threat of criminal prosecution under Washington state's cyberstalking statute. Last year, the Bainbridge Island Police Department referred charges to the county prosecutor, who told Rynearson that he would sit on those charges and watch his behavior before moving forward with a charging decision. That threat of criminal prosecution is the one he seeks to challenge in federal court. A second, separate restriction on Rynearson's speech was a civil protective order obtained in state court by Mr. Moriwaki, a private citizen. That order was a narrow restriction prohibiting specified uses of Moriwaki's name. Rynearson complied with that order and successfully challenged it in state court. Mr. Moriwaki is not a party to this case, and Rynearson isn't seeking relief that would preclude or compel action by any of the parties in that case. In this suit, Rynearson challenges only the criminal cyberstalking statute and asks for an injunction against its prosecution. The district court abstained from hearing this challenge under Younger, and we ask that this court find abstention improper for two reasons. First, if this court were to remand the case back to the district court, and that court were to grant Rynearson his relief, that relief could not have the practical effect of enjoining the state proceedings, Mr. Moriwaki's order. Second, those proceedings are not within either of the narrow categories of civil cases which can justify Younger abstention. They are neither quasi-criminal nor an effort to interfere with the state's ability to enforce the judgments of its courts. With respect to that first point, Your Honor, that the requested relief have the effect of practically enjoining the state proceedings, a threat, a challenge to potential criminal prosecution is distinct from a challenge to the protective order. Rynearson challenged- If we agree with you that, for example, this was not a quasi-criminal action, we don't reach the issue you're now addressing, correct? That's correct, Your Honor. Go ahead, I'm sorry. The two restrictions cover different conduct. Rynearson's challenge in state court to Mr. Moriwaki's order lifted only that restriction, but the restriction imposed by threat of prosecution under the cyber-stalking statute remains in place, and that's what he's asking to be able to challenge in federal court here. Rynearson isn't suing anyone involved in the state proceedings and not seeking relief that would require preclude action by either Mr. Moriwaki or the state court. Am I correct in believing that there are no state proceedings alive at this moment? That's correct, Your Honor. But I understand it's the case that the time that matters is the time when the lawsuit was filed, so you're not objecting based on the fact there's no proceeding to conflict with? No, Your Honor. Under Kitchens and Gilbertson, the relevant date is when the case was filed, and under Hicks, the court can consider events that transpire in the state case before any proceedings of merits on the federal case, which is why we've asked this court to take judicial notice of the permanent protective order. A challenge to the cyber-stalking statute is distinct from a challenge to the order itself or the statute which authorizes protective orders, as well as the statute which punishes violation. Why is it quasi-criminal in that it's closely related to criminal statute? Let me ask you this. What sort of findings does the state court have to make in order to issue a protective order like the one in this case? Does this court have to find that there's evidence sufficient to believe that there was stalking, cyber-stalking, and unlawful harassment violations? Yes, Your Honor. The order is predicated on a finding that Mr. Moriwaki met the standards for relief by preponderance of the evidence, and those standards are laid out in the criminal-stalking statute, the cyber-stalking statute, and the civil-harassment statute. Then why isn't that enough to be quasi-criminal in nature? If the state court had to basically make a finding, albeit with a lower standard of proof, that these criminal violations occurred, is something more required? Is it the difference in the standard of proof? No, Your Honor. We think there's a few things that make the state proceedings not quasi-criminal. The state isn't a party to those proceedings. The only role that the state plays is the municipal judge who adjudicated a dispute between those two private parties. Protective orders, again, are based on a finding that the petitioner met a standard for relief by a preponderance of the evidence. The stated purpose of protective orders isn't to punish respondents, but to give the victims of stalking conduct a civil right in civil court, and injunctive protection, basically. Violations of protective orders are punished the same way that violations of any civil injunction are punished in the state of Washington. And the fact that the only state actor in that case was the municipal judge, we think it's relevant. And as a more general matter, isn't it fair to say that most torts have parallel criminal statutes? So you have a tort for assault, you have a criminal statute for assault, but no one suggests that a tort action is quasi-criminal just because it's got a parallel in a criminal assault action. Yes, Your Honor. We argued that in our briefs as well. And the fact that the standards for relief were laid out in some criminal statutes doesn't make the civil action itself quasi-criminal per se. Under this court's younger jurisprudence, as I was discussing before, a challenge to the cyber-stalking statute is distinct from a challenge to the statute that authorizes protective orders or that punishes violations of them. And under this court's younger jurisprudence, a challenge to a different statute than the one used to prosecute the federal plaintiff in state court falls outside of the scope of younger. Additionally, Reinerson couldn't have used a federal judgment in his favor for hypothetical proceedings for violating that order if he had violated the order, because Washington State follows the collateral bar rule. Even if the order had been predicated solely on the cyber-stalking statute, he would not have been able to do so. And finally, none of the parties in the state case, Reinerson isn't suing any of the parties in the state case, and so neither Morawaki nor the state court judges would be bound by an injunction against the prosecutors who are defendants here. The other type of civil case which can justify younger abstention that we do not believe is applicable here is a challenge to the state's ability to enforce the judgments of its courts. But again, Reinerson isn't challenging either the order itself or the state's process for issuing protective orders more generally. I'm nearing my time, so if your honors have no more questions, I'll conclude. Thank you. This is a case about Reinerson's ability to ask for protection for prosecution that he believes violates his constitutional rights. We ask that this court find abstention improper and allow Reinerson to make his claim in federal court. Thank you. Your honors, Eugene Wallach, also for Mr. Reinerson. I would be delighted to answer any questions that the panel might have, but in the absence of any, I think my co-counsel has done an admirable job. Your colleague has done a good job of presenting the case. I don't have anything more. Admirable job. So I would like, if there are no further questions, I'd just like to reserve three minutes for rebuttal. Thank you, your honors. Thank you, your honors. May it please the court. My name is Callie Castillo. I'm here on behalf of the state appellees in this matter. The district court correctly abstained out of respect and comity for the ongoing anti-stalking proceedings that were occurring in the Washington State Municipal Court. This case does meet all of the five different factors that this court and the United States Supreme Court has recognized for younger abstention, and therefore this court should affirm. So why do you think it's quasi-criminal? I'm looking at Sprint versus Jacobs 571 U.S. 69, a case out of the Supreme Court in 2013. And although, of course, we don't always pay attention to the Supreme Court here. Pay attention. True, true, true. We know they're out there. Take it for what it's worth, right. But in all seriousness, the court there says, in cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. That's not true here. Investigations are commonly involved. That's not true here. Often culminating in the filing of a formal complaint or charges. So it doesn't sound like this is the kind of quasi-criminal action they were concerned about. It sounds like they were more thinking about like you might have in a state criminal case, you might have in some states a separate civil action to attach the wrongfully absconded stolen goods or something like that, but it would be filed simultaneously by the state along on the same day that they filed the indictment. That's not the situation here at all. Anti-stalking protection order proceedings are a unique procedure invoking the court's enforcement authority. So yes, it is true that the state is not the prosecutor or the civil enforcer, but it is a means for the private citizen to invoke the court's enforcement authority over criminal laws. And the specific anti-stalking proceedings here are specifically require the municipal court or the superior court to determine whether criminal laws have been violated, albeit at a lower standard. But it allows the private citizen to seek the court's help before a prosecutor has to get involved. Would that mean that the tort action for assault that Judge Rakoff referred to amounts to a quasi-criminal proceeding? No, I would argue that that would be the standard garden-type civil action that United States Supreme Court has recognized is not applicable for Geiger. But it exactly fits the description you gave us. It's an effort by a private citizen to enforce a state criminal law against assault, albeit with a lower standard burden of proof. Why isn't that the same thing here? Well, first of all, the remedy in terms of a tort action is for civil liability. Yeah, but why isn't that more like a... And that is, in effect, a deterrent. So it's more... That would be more of a criminal. Here, it's just preventive, the civil action, whereas the criminal law deals, by and large, with completed offenses. And the tort of assault would be, therefore, under your analysis, quasi-criminal because it's seeking to bring another form of deterrence in the form of damages. But that is a punishment situation, whereas here, it's the court's authority of restraining criminal behavior and seeking protection for the citizen before criminal charges are brought. And if the court will look to what the plaintiffs have pointed out with respect to what the King County... I'm sorry, Kitsap County prosecutor was referencing, is she was specifically saying, I'm not going to decide any point of the criminal charges because I'm going to see what Mr. Ryan-Nierson does with respecting the protective orders in place. So it is certainly the court's authority that is at issue here with respect to the cyber-stalking law and the criminal behavior. And maybe we're moving to the other of the five factors at issue, but I don't really understand how granting relief to the plaintiff here would have enjoined the state court proceeding or had an impact on the order that was ultimately issued. Mr. Ryan-Nierson was simply trying to use the federal court as both a sword and a shield for the cyber-stalking conduct that was at issue. He specifically wished to engage in this criminal behavior and was seeking a means of the federal court to protect him from that. So if hypothetically... But how? I mean, my question is, how would the order have been affected? So if he would have obtained the relief that he was asking for in both an injunction against the state from enforcing the cyber-stalking law and a declaration that that law was unconstitutional, that certainly would have had an impact on the municipal court's ability to apply that law in the ongoing protective order proceedings. It is simply not reasonable. Look at the order that issued. What changes? I mean, because the municipal court order didn't rely simply upon the cyber-stalking statute and didn't focus or limit its effect to that, and there's nothing in the balance that would seem to be affected in the slightest. I disagree, Your Honor, because the municipal courts, the three factors that the court was looking at was stalking, cyber-stalking, and harassment. And it's basically like a stool. And by a federal court coming in and having Mr. Rynearson with authority to say, I am free by the federal court to engage in this behavior and the state cannot enforce this law against me, that has a direct impact on the municipal court's ability to apply that law. And it's not the fact that it would have a direct injunction or direct injunctive effect. The United States Supreme Court in Sprint has said that it is merely the prospect of undue influence. And here, Mr. Rynearson was attempting to knock out the third leg of the stool that the municipal court was applying in determining whether he should issue the protective order against Mr. Rynearson, as well as answer Mr. Rynearson's request to find that statute and the proceedings based on that statute unconstitutional. So it certainly would have impacted the municipal court's analysis and had an undue effect on the municipal court proceedings. And I'd like to just turn back quickly to the prong with respect to the quasi-criminal and the other aspect of the type of civil case in proceedings that have a directly interest in enforcing the orders of its courts. And here, it's not the municipal court's order against Mr. Rynearson that was at issue and for this court to look at. Instead, it is looking at the type of proceeding that the municipal court was applying. And the anti-stalking statutes that are at issue specifically rely on the cyber-stalking law. So in order for Mr. Rynearson to obtain his federal relief, that most certainly would have impacted the state court's ability to apply the laws at issue and issue the orders that, one, to enforce the temporary protective orders that were already in place, as well as the permanent protective order proceedings that were going to be at place at the same time. And then briefly, I'd like to just touch again upon the Judicial Enforcement Authority. This is not like a standard case between two private citizens. This is invoking the court's power to restrain a citizen from criminal behavior. And thus, that is a quasi-criminal proceeding. It is also the type of civil proceeding that Washington has a specific interest in enforcing the orders of its courts. And the federal action would have directly impacted the ongoing state proceedings. You talk about enforcing the order of the court. As I understand the position that plaintiff has taken, there's nothing that he could offer up as a defense to any violation of the order. What would prevent the state from enforcing the order that was issued? Or what would have at the time the order was in place? Certainly, it could have been the arguments that the law was unconstitutional and has been held unconstitutional. But it's not, again, it's not the actual orders that the municipal court was issuing against Mr. Rynearson. It is not the preclusive effect of the state of enforcing the protective orders. What this court is looking at under the United States Supreme Court and its own case law is the underlying laws at issue. And what Mr. Rynearson was attempting to do is use the federal court authority to sweep out the state court's authority to issue the protective order proceedings. Because there's only three basis that these anti-stalking orders can be issued, and cyber-stalking is one of those. So if you have, if he had obtained the federal relief, the ultimate federal relief that he was seeking, in which the state cannot enforce this law, not only with respect to the criminal, but the civil because of him bringing in Attorney General Ferguson, then he has directly undercutted the state court proceedings. Well, I think we're mixing up two things. We've talked about, and may talk again about, interfering or interrupting the state court proceeding. But the question I posed had to do with the state's ability to enforce the order. And plaintiff has taken the position that whatever was going on in the federal court wouldn't serve him as a defense to an enforcement action if he had in fact violated the order when it was outstanding. And that's the question I'm looking for you to address. And if it's true that what was going on in federal court wouldn't be a defense for him, how would that interfere with the state's ability to enforce the order? It's asking two separate questions, Your Honor. With respect to the protective order, if Mr. Ryan Niersen had violated the protective order, what the federal court did would not have any impact on the violation of the protective order. And so the state's ability to enforce that order wouldn't be affected. Correct. But what is at issue is the state's ability to bring the cyber-stalking anti-harassment protective orders in the first place. Well, the state didn't bring it. But it's the court's power to enforce that. Well, no, that wouldn't be affected either if the federal action doesn't provide him with a defense. I mean, we have separately the question as to whether there'd be interference with the court proceeding, which you've identified or taken the position as quasi-criminal. But the other part, the part about whether the federal action involved the state's interest in enforcing the orders and judgments of its courts, I don't hear a basis for that if, in fact, it is true that the federal proceeding would not provide plaintiff with the defense in state court. That's only if he had violated the protective order, but that's not what- There's nothing for the state to enforce if he didn't. But that's not, but there is for the municipal court's authority to have issued the permanent- That's going back to the other part. I mean, there are multiple justifications here and you've offered as one of them that this would interfere with the state's ability to enforce, and I haven't heard that yet. If it is true, which you don't dispute, that the federal action doesn't give him a defense to an enforcement action in state court. With respect to a violation of the protective order, but that's not what was at issue here. Well, that's what the state's interest is. I mean, the question is, does the state have an interest? Will this interfere with the state's interest in enforcing an order and judgment? And for me, the answer is no, unless you provide something more than I've heard so far. I'm not saying there's not an argument with regard to interfering with what the municipal court might issue while that was an ongoing proceeding, but that's something different than whether the state can enforce an order. What, there's nothing I see that stops the state from enforcing whatever order issued. This, Mr. Rynearson brought the federal lawsuit at the moment in time between the issue of the temporary protective order, but before the state court had issued its permanent protective order. And that temporary protective order is certainly at issue with the state's interest and the municipal court's ability to then issue the permanent protective order based on that conduct. If Mr. Rynearson had obtained his relief at the moment of time that he brought this federal lawsuit, it would have directly had an impact on the state court's authority to enforce its own temporary order because Mr. Rynearson could come in. So it's not, your theory then isn't reliant on the fact that the state is going to be prevented from enforcing its order in the event of a violation. It's just the in-between period where the state may have been deprived of its power to issue a permanent order. Correct, and that's what the United States Supreme Court was looking at in Middlesex with the bar disciplinary proceedings. It wasn't, it was the process and the state court's interest in those proceedings and the orders that were at issue for the type of civil case that is appropriate. Now, yes, bar disciplinary proceedings have been held to be quasi-criminal, but it is also the state's argument here that this anti-stalking proceedings are quasi-criminal in the same aspect as those bar type of proceedings. And so this case not only meets the two specific types of civil case that are specific for Younger, but it also would have had a direct impact. And because none of the other elements of Younger abstention are at issue here, this court should affirm the district court. You're over time, so let me see if my colleagues have additional questions. No. Thank you. We stole from the plaintiff and gave to the defendant the extra time. No problem at all, Your Honors. So I just want to speak very briefly to the argument that was just offered in the last couple of minutes. Let's look back at what was happening at the time the federal claim had been brought. The most important thing is the federal claim was brought against the prosecutors. And Mr. Rynearson was aware that all that he could do with that claim is to prevent a federal prosecution under this very broad statute, which bars any repeated online communications that are intended. Not just a federal prosecution, a prosecution. Presumably it would be a prosecution by the state. Yes, I am so sorry. Yes, he wanted to ask the federal court to enjoin the state prosecution under the state statute. He was aware that there was this temporary order that was likely to mature and to ripen into a permanent order. Nothing in that proceeding would have enjoined or had the practical effect of enjoining those proceedings, in part because the prosecutors who were the parties to his federal case were not parties to that case. He didn't name Mr. Murawaki. So Mr. Murawaki would not have been bound by the outcome of a federal injunction. He did not try to name the state courts or anything like that. In the Middlesex case, the lawsuit was brought against state enforcement authorities. That's why it would have had the practical effect of enjoining certain proceedings. So he realized that he would have to proceed as he did and ultimately successfully proceeded challenging the narrower state court order, state temporary restraining order and any permanent order in state court. But he wanted to in the meantime be assured that so long as he complied with the state order, he wouldn't also, excuse me, the state order, he wouldn't also be subject to the risk of prosecution under the criminal statute by the prosecutor. Then we have with regard to, I guess the second factor is identified in our case, sort of the alternatives of the quasi interfering with the quasi criminal enforcement action or involving the state's interest in enforcing an order. And you're saying not gonna have any impact on the state's interest. But if we assume for the moment it is quasi criminal, it's not hard to understand the state's argument or the prosecutor's argument that the municipal court will be affected or impacted by what the federal court is doing and feel inhibited in relying upon the three legged stool if one of the legs seems to have been removed. So if we assume for a moment it's quasi criminal, isn't there interference with an ongoing enforcement action? No, your honor, we don't think so. Because the state, Washington state courts take the view, which they're entitled to take, that they're not bound as a precedential matter by federal court decisions except from the US Supreme Court. There would be no collateral estoppel effect there because there was no identity of parties. The only possible effect, and we acknowledge it is an effect, might be the persuasive force of the federal district court order. The municipal court might look at it and say, well, I'm not bound by this order, but I look at it and it sounds like it makes sense. But that's not the practical effect of enjoining, nor is this the requirement of substantial interference, which really does not weaken the requirement of practical effect of enjoining. It's just one court taking seriously what another court in a recent opinion says. We were indeed hoping that that would happen, but that would be the only effect and that would not be a sufficient effect to trigger Younger. One way of thinking about it is this persuasive effect would also occur even if the lawsuit had been brought by a completely different party. Let's say it wasn't Mr. Rynearson, but somebody else in the same county or in a different county who at the same time happened to bring the same challenge against prosecutors. Again, not Mr. Marwacki. Presumably, if the federal district court had enjoined in that separate proceeding, had enjoined the state prosecutors from enforcing the statute, likewise, you'd hope that a municipal court would take that seriously, but that wouldn't be occasion for Younger abstention because that wouldn't have the practical effect of enjoining the state proceedings. Likewise here, the federal lawsuit, had it been successful, would only have prevented the prosecution by the prosecutors, would not have had the practical effect of enjoining either the temporary or the permanent one. Your Honors, if I have no further questions, if you have no further questions. All right. Thank you very much both sides. Thank you for supervising this case and accepting the case as well. Well done. The matter is submitted for decision.
judges: Clifton, Nguyen, Rakoff